UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

MICHAEL KNEITEL,

        Plaintiff,

-against-

COSMO LUBRANO, JOSEPH ORFICO,
WAYNE HARRISON,

        Defendants.

----------------------------------------X

**REPORT AND RECOMMENDATION**
**04-CV-0971 (NGG)(LB)**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT. E.D.N.Y.
★ JAN 24 2007 ★
BROOKLYN OFFICE

**BLOOM, United States Magistrate Judge:**

    Plaintiff brings this *pro se* action pursuant to 42 U.S.C. §1983 alleging that defendants unlawfully seized his automobile and unlawfully barred him access to his property in a storage unit registered in his name.[1] Defendants move for summary judgment under Fed. R. Civ. P. 56. The Honorable Nicholas G. Garaufis referred this motion to me for Report and Recommendation under 28 U.S.C §636(b). For the reasons that follow, it is respectfully recommended that defendants' motion for summary judgment should be granted in part and denied in part.

## BACKGROUND

    Plaintiff was arrested on February 28, 2001 in Gerritsen Park in Brooklyn, New York and charged with Reckless Endangerment, Menacing, and Criminal Possession of a Weapon. Arrest Report, Exhibit A to the June 13, 2005 Eichenholtz Declaration (hereinafter "Eichenholtz

---

[1] By order dated March 24, 2004, the Court dismissed all other claims alleged in plaintiff's complaint against defendants Michael Danchuk, Salvatore Van-Casteren, Luis Pepe, Avery Mehlman, and Charles Hynes.

1

Decl."). Incident to plaintiff's arrest, defendants Sergeant Orrico and Officer Lubrano, both of the New York Police Department ("NYPD"), searched and seized plaintiff's vehicle, a 1992 Acura. Transcript of proceeding before Judge Pincus, pp. 84-88, Exhibit D to Eichenholtz Decl. The defendants inventoried the contents of the car, but did not issue plaintiff a voucher at that time. Id.

Later, defendant Detective Wayne Harrison, also of the NYPD, sought and obtained a warrant to search plaintiff's house. Transcript of proceeding before Judge Tomei, Exhibit G to Eichenholtz Decl., pp. 391-392. On March 1st of 2001, Harrison conducted the search along with defendant Lubrano and other NYPD officers. Id. at 393-407. Defendant Harrison later obtained two additional search warrants for two Brooklyn storage units registered in plaintiff's name, one on Bay 19th Street and one on Shore Parkway. Id. at 393. During the search of plaintiff's house and the storage facilities, items were seized as evidence, vouchered and held by the NYPD. Id. at 405-408. Neither defendant Harrison, nor any other individual, issued plaintiff a voucher for his seized property until over six months later when copies of vouchers were provided to plaintiff's defense attorney in September or October of 2001. Examination of Plaintiff, January 12, 2005, Exhibit E to Eichenholtz Decl. pp. 60-66 (hereinafter "Plaintiff's Deposition").

On May 21, 2001, plaintiff sent letters to both defendant Harrison and Richard Capolongo, Captain of the arresting precinct, inquiring as to the whereabouts of, and requesting vouchers for, his property. Letters to Harrison and Capalongo and response, Exhibit U, attached to plaintiff's reply (hereinafter 'Capalongo Letters"). Capolongo responded on July 6, informing plaintiff that his property was being safely held by the NYPD and that he could

retrieve vouchers for his property at the precinct upon his release from custody. Id. Plaintiff was released from Rikers Island in or about late July, 2001. Plaintiff's Deposition, pp. 22-23.

Shortly after his release, plaintiff placed calls to a number of agencies and offices, providing them with his vehicle identification number in an attempt to locate his car. Id. at 23. He then visited the NYPD Property Clerk's Brooklyn office on Gold Street, which could not help him. They referred him to another Brooklyn office to obtain the voucher numbers for his property and to find out whether the property was being held as evidence or would be released. Id. at 26-27. From there, in or about early August 2001, plaintiff requested the paperwork for release of his seized property from the Kings County District Attorney ("DA"). Id. at 23; Letter to Mehlman/Response, Exhibit V, attached to plaintiff's reply. The DA's office denied plaintiff's request by letter dated August 15th stating the property would be retained as possible evidence for the upcoming criminal trial. Id. Plaintiff was allowed, however, to recover some of his property that was not designated as arrest evidence. Plaintiff's Deposition at 27-28. Plaintiff also served a subpoena duces tecum in an effort to recover his property. Id. at 27.

Plaintiff learned in or about early August that his car had been sold at auction by the NYPD. Id. at 21-22. According to NYPD records, the department released the vehicle for sale at auction on July 25, 2001. Verification of Vehicle Storage, Exhibit Y, attached to plaintiff's reply. Plaintiff filed an auction-proceeds claim on August 6 with the Property Clerk Division of the NYPD, requesting the proceeds from the sale of his vehicle. Letters to/from Property Clerk, Exhibit Y attached to plaintiff's reply. The office responded 14 days later by mail that there was a discrepancy in the identifying documentation that plaintiff submitted and that he would have to submit new documents. Id. The record does not reflect whether plaintiff took any further action regarding the auction proceeds claim.

3

Plaintiff also alleges that, based on conversations he had with an employee at the Shore Parkway storage facility, the NYPD put a "hold" on his storage unit, barring him access to the property stored therein. Plaintiff's Deposition, at 29-31. Plaintiff refers to a letter from the District Attorney's office informing him of the hold, but no such letter has been produced as part of the record herein.

The parties conducted discovery. Defendants now move for summary judgment and plaintiff opposes the motion.[2]

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate if the evidence shows there is no genuine issue of material fact requiring a trial and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "An issue of fact is genuine 'if the evidence is such that a jury could return a verdict for the nonmoving party.'" Overton v. New York State Div. of Military and Naval Affairs, 373 F.3d 83, 89 (2d Cir. 2004) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "A fact is material for these purposes if it 'might affect the outcome of the suit under the governing law.'" Id. (quoting Anderson, 477 U.S. at 248). "Factual disputes that are irrelevant or unnecessary" under the governing law "will not be counted." Anderson, 477 U.S. at 248.

The party moving for summary judgment carries the burden of showing that no genuine issue of material fact exists. Powell v. National Board of Medical Examiners, 364 F.3d 79, 84

---

[2] Defendants gave plaintiff the requisite notice under Local Civil Rule 56.2.

(2d Cir. 2004)."When a motion for summary judgment is made and supported..., an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita, 475 U.S. at 586-87 (1986). In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in his favor. Anderson, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation... are insufficient to create a genuine issue of fact." Niagra Mohawk Power Corp. v. Jones Chemical, Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000).

Finally, "[w]here the non-moving party is proceeding *pro se*, the court must interpret that party's supporting papers liberally, that is, interpret them 'to raise the strongest possible arguments that they suggest.'" Forsyth v. Fed'n Empl. & Guidance Serv., 409 F.3d 565, 569 (2d Cir. 2005) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). "However, a pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Lee v. Coughlin, 902 F.Supp. 424 (S.D.N.Y. 1995) (citing Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir.1991)).

## II. Plaintiff's §1983 Claims

### A. Plaintiff's Vehicle

Pursuant to Section 1983 of Title 42 of the United States Code, a plaintiff must establish (1) that he has been deprived of a federally protected right, and (2) that he was deprived of that right by a person acting under color of state law. American Manufacturers Mutual Insurance Co. V. Sullivan, 526 U.S. 40, 49-50 (1999); Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994).

Here, plaintiff's claim arises under the Fourteenth Amendment, as he alleges defendants deprived him of his property without due process of law. A plaintiff bringing a §1983 claim for the unlawful taking of property must first show that no meaningful post-deprivation remedy exists under state law. Hudson v. Palmer, 468 U.S. 517, 533; Parratt v. Taylor, 451 U.S. 527, 542-44 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-31 (1986). The Second Circuit has interpreted this requirement to be applicable only where the violation is "random and unauthorized." Butler v. Castro, 896 F.2d 698, 700 (2d Cir. 1990). Where the deprivation is a result of the "operation of established state procedures," the existence of adequate state remedies does not defeat a §1983 claim. Sullivan v. Town of Salem, 805 F.2d 81 (2d Cir. 1986); Mejia v. New York City Dep't of Corrections, No. 96 CV 2306, 1999 WL 138306, at *4 (E.D.N.Y. 1999) (dismissing prisoner's § 1983 claim for "random and unauthorized" deprivation of property). However, mere conclusory allegations that a municipality's policy, custom or practice has led to a deprivation will not suffice to establish a §1983 claim. See Butler, 896 F.2d at 700. In order to prevail, plaintiff must show that the alleged injurious conduct was the product of a municipal policy or custom. Anthony v. City of

New York, 339 F.3d 129, 139 (2d Cir. 2003) (citing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690-91 (1978)).

Plaintiff argues that defendants' actions herein were part of a "systematic refusal to abide by the law and turn over property vouchers." Plaintiff's Opposition (labeled "Reply"), p. 19. When NYPD officers seize a vehicle in connection with an arrest, the department is required to issue a voucher to the arrestee and the arrestee is given the opportunity to verify the accuracy of the voucher and sign. 38 R.C.N.Y. § 12-32(a-b, d).[3] The arresting officer may determine at the time of seizure that the vehicle is needed as possible evidence for the criminal proceeding and mark the vehicle as "arrest evidence." 38 R.C.N.Y. § 12-31. If the DA subsequently agrees with this determination, the property is marked as "trial evidence." Id. Within 120 days of the termination of a criminal proceeding related to the seized property (or within 270 days, if the property is deemed evidence and requires a release from the DA's office), a claimant may bring a demand to recover the vehicle. 38 R.C.N.Y. § 12-35(c-d). The procedure for making a demand to recover a vehicle is detailed on the back of the voucher as well as in the published Rules and Regulations of the City of New York. 38 R.C.N.Y. § 12-32(e).

It has been held that claimants who do not receive seized-property vouchers, for whatever reason, may be *systematically misinformed* of the available procedures for recovering their property. Alexandre v. Cortes, 140 F.3d 406, 410 (2d Cir. 1998)(citing Butler, 896 F.2d 698,704). In Butler, plaintiff filed a suit similar to the one at bar for the unlawful sale of his vehicle, which had been auctioned by the police after months of unsuccessful attempts by

---

[3] The United States Court of Appeals for the Second Circuit in Krimstock v. Kelly, 306 F.3d 40 (2d Cir. 2002), which was decided after the seizure of plaintiff's vehicle challenged herein, also requires that an arrestee be notified of his or her right to a hearing on the retention of a vehicle for forfeiture. Subsequent rulings in the same case extend this requirement to vehicles held as evidence and require review by a neutral fact-finder of a district attorney's decision to retain the vehicle. Id.

plaintiff to recover the vehicle. In that case, the plaintiff was only given a copy of the front side of the voucher for his car following seizure, where the back of the voucher listed the procedures for recovery. Without a full voucher, plaintiff was relegated to the provisions for recovery detailed in §14-140 of the City's Administrative Code. Those provisions, however, had not been amended to reflect the revised procedures for recovering seized property from police custody as set forth in <u>McClendon v. Rosetti</u>, 460 F.2d 111(2d Cir. 1972). <u>Butler</u> at 700. The court therefore found defendant's failure to provide a complete voucher deprived claimants of due process as it forced claimants to rely on a defective administrative code to recover their property. See <u>Id</u>. at 703.

In <u>Larkin v. Savage</u>, 318 F.3d 138 (2d Cir. 2003), the Circuit again revisited the procedures for recovering seized vehicles from the NYPD. The plaintiff in <u>Larkin</u> surrendered his truck to the police as a part of a homicide investigation. After obtaining an order of release from the DA's office, plaintiff made several attempts to recover his truck, including making inquiries with the investigating officer, the New York State Attorney General's Office, the New York State Commission of Investigation, the NYPD's Internal Affairs Bureau, and finally with the NYPD's Motor Vehicle Impound Facility, which ultimately refused to release the vehicle. Plaintiff brought a §1983 action claiming he was denied due process by defendant's failure to return his truck. This Court dismissed plaintiff's actions and the Court of Appeals reversed, stating that (1) whether the procedures for recovery set forth in City Rule § 12 had been properly amended to reflect the requirements of due process was "an open question in our circuit," and (2) even if they are adequate, "they only bar a § 1983 action for the deprivation of property if the plaintiff was given *proper* notice of their requirements." <u>Id</u>. at 141 (emphasis in original)(citing

Alexandre, 140 F.3d 406, 414). In Larkin, plaintiff's inability to reclaim his vehicle after repeatedly following the instructions given to him presented a material issue of fact as to whether he was given notice of the *proper* procedures for recovering his vehicle. The fact that the plaintiff may have eventually been given proper notice through his own efforts did not persuade the Court that due process had been observed. In Larkin, plaintiff followed the procedures as he was told, but was still not able to obtain his vehicle, raising "serious questions as to whether the state's *procedures* for recovering property were adequate to satisfy the requirements of due process." Id. (emphasis added).

Plaintiff's case presents direct parallels to both Butler and Larkin. Defendant Lubrano stated at plaintiff's criminal trial that plaintiff had never been shown or presented with the voucher for the seized vehicle, which contained the procedures for recovery. Transcript, Exhibit K, attached to plaintiff's reply, at 51. The whereabouts of the vehicle and the method to obtain it were discovered only through plaintiff's efforts after numerous inquiries to various state actors and departments. Plaintiff's attempts to recover his vehicle persisted for a matter of months, and included a combination of phone calls, letters and visits with the captain of the arresting precinct at the NYPD, the NYPD Property Clerk, an NYPD impound lot, and the DA's office. Only after this lengthy bureaucratic odyssey was plaintiff informed that his vehicle had mistakenly been sold at auction.

As with Larkin, the fact that plaintiff timely followed the procedures for recovery suggested to him by a number of state employees, but was nevertheless unable to obtain his vehicle raises two material issues of fact in this case: one, whether he was given proper notice of the procedures for recovering his vehicle and two, whether the available procedures for recovery in fact satisfy due process. Defendants bear the burden as movants in the present motion to

prove that no such material issue of fact exists. Defendants correctly note that plaintiff fails to provide evidence of defendant Lubrano's alleged personal involvement in the sale of his vehicle. Nevertheless, defendants failed to provide plaintiff with the voucher for the seized vehicle, and the question remains whether plaintiff was ever given proper notice of the requirements to recover his property. Moreover, despite plaintiff's demonstrated efforts to reclaim his car, and despite the fact that the vehicle was marked to be held as evidence by the DA, the property clerk sold plaintiff's car at auction. Defendants' motion contains no affidavits from any defendant to explain their failure to provide notice or to account for plaintiff's inability to recover his vehicle. The absence of such proof, at the very least, leaves questions unanswered regarding the adequacy of both the notice and the procedures for recovery in this case. Defendants simply have not carried their burden on this motion.

Defendants argue further that plaintiff's claim is not actionable because the State offers adequate post-deprivation remedies in the form of negligence, conversion and replevin. Memorandum of Law in Support of Motion for Summary Judgment, 6-7 (hereinafter "Motion"). In this instance, it matters not that the claimant was able to seek redress in State Court, because "claimants are entitled to notice of the primary remedy regardless of the existence of other remedies." <u>Butler</u>, 896 F.2d at 703-04 ("The fact that the Code misleads claimants as to the primary remedy makes the availability of replevin, or any other secondary New York remedy, irrelevant. Indeed, where no steps are taken to invoke the primary remedy, the sale or other disposition of the property becomes inevitable.").

Defendants' additional claim that the seizure herein was not a violation of plaintiff's due process rights because defendants obtained a search warrant is unavailing. The issue here is not

whether the initial seizure of the car was lawful, but whether the notice of the procedures for plaintiff to recover his seized property was adequate. A lawful seizure does not excuse defendants from affording plaintiff due process. Therefore, defendant's motion for summary judgment should be denied as to plaintiff's due process claim regarding his vehicle.

### B. Plaintiff's Storage Unit

Plaintiff's claim regarding his two storage lockers, however, should be dismissed. Plaintiff refers to a conversation with a man named John at the private self-storage facility, in which he states he was told that the NYPD had placed a hold on his lockers. Plaintiff's Deposition, at 31. However, plaintiff has not produced any evidence to demonstrate that defendants ever placed a "hold" on these lockers or their contents. Although plaintiff's storage space was searched, his claim regarding a seizure of these two storage units and their contents should be dismissed as conclusory.

## III. Qualified Immunity

Qualified immunity should not be granted. Defendants assert they are entitled to immunity because the decision to seize the vehicle was not only objectively reasonable, but was upheld in the criminal proceedings. Motion at 14. Again however, the challenged violation is not the seizure of plaintiff's car, but the failure to provide proper notice of the procedures to recover the vehicle. Qualified immunity may be sustained as a defense only where an official's actions "[do] not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The requirement that owners of seized property be given proper notice is clearly established and

defendants' position on the instant motion begs the plain question: why can't the NYPD get this right?

Since McClendon v. Rosetti, 460 F.2d 111 (2d Cir. 1972), more than three decades ago, this Circuit has repeatedly ruled that individuals are entitled to proper notice of how to recover their property in the form of a voucher when their property is seized by the police. See e.g. Larkin, 318 F.3d 138; Krimstock v. Kelly, 306 F.3d 40, 45 (2d Cir. 2002); Alexandre, 140 F.3d 406; Butler, 896 F.2d 698; Mackey v. Property Clerk of City of N.Y. Pol. Dept., 26 F.Supp.2d 585, 589 (S.D.N.Y. 1998); Leyh v. Property Clerk of City of N.Y. Pol. Dept., 774 F.Supp. 742, 745 (E.D.N.Y. 1991). Also, the requirement that the NYPD provide property owners a voucher of seized property is specified in Chapter 12 of the Rules of the City of New York, 38 RCNY § 12-32, and is therefore a ministerial, not a discretionary duty. See Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991)("[qualified immunity] shields government officials performing discretionary–as distinct from ministerial–functions..."). Defendants Lubrano and Orrico's testimony at plaintiff's criminal trial demonstrated their full understanding of the rules and procedures for searching, indexing and providing vouchers for seized property. Transcript, cross-examination of Lubrano, 52-54; Transcript, cross-examination of Orrico, 29-37 (both attached as Exhibit K to plaintiff's reply). The requirement to give property owners proper notice of how to recover seized property is clearly established law, thus defendants' actions herein should not be afforded qualified immunity on plaintiff's claim regarding his vehicle.

## CONCLUSION

Accordingly, defendants' motion for summary judgment should be granted in part and denied in part. Defendants' motion for summary judgment relating to plaintiff's vehicle should be denied as issues of material fact remain as to whether plaintiff was given *proper* notice of the procedures for recovery and as to whether the procedures are adequate to satisfy due process. Defendant's motion regarding the alleged seizure of plaintiff's storage units and their contents should be granted as plaintiff presents no evidence upon which a jury could return a verdict in his favor. Therefore, plaintiff's claim regarding the storage units should be dismissed.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED:

LOIS BLOOM
United States Magistrate Judge

Dated: January 24, 2007
Brooklyn, New York

13