UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

MICHAEL KNEITEL,

                Plaintiff,

       -against-

MICHAEL DANCHUK, COSMO LUBRANO
JOSEPH ORRICO, WAYNE HARRISON,
SALVATORE VAN-CASTEREN, LUIS PEPE,
AVERY MEHLMAN, CHARLES HYNES,

                Defendants.

-------------------------------------------------------------X

**FILED**

IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ JUL 0 6 2007 ★

BROOKLYN OFFICE

**MEMORANDUM AND ORDER**

04-CV-0971 (NGG) (LB)

GARAUFIS, United States District Judge:

    In this action, brought *pro se* by Plaintiff Michael Kneitel ("Kneitel" or "Plaintiff")

pursuant to 42 U.S.C. §1983, Plaintiff alleges that the three remaining defendants, Danchuk,

Lubrano, and Orrico (collectively "Defendants"), all members of the New York City Police

Department, violated his constitutional rights by, *inter alia*, searching and seizing his automobile

and barring him access to rented storage lockers. Defendants moved for summary judgment, a

motion which I referred to Magistrate Judge Lois Bloom for a Report and Recommendation ("R

& R"). Both Plaintiff and Defendants submitted timely statements of objections to the R & R,

thereby requiring this court to make a *de novo* review of all portions of the R & R to which

Plaintiff and Defendants specifically objected. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Having so reviewed Judge Bloom's R & R and Plaintiff's objections, I adopt the R & R in part

and reject the R & R in part and overrule Defendants' objections in part and sustain Defendants'

objections in part. With regard to Plaintiff's automobile-seizure claim, I grant summary judgment

in favor of Defendant Harrison and deny summary judgment for Defendants Lubrano and Orrico.

With regard to Plaintiff's storage-locker claim, I grant summary judgment in favor of all three

Defendants.

## I.    Background

Plaintiff brought this *pro se* action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights by committing various illegal acts in the course of arresting him on February 28, 2001 inside Gerritsen Park in Brooklyn, New York. As a result of his arrest, Plaintiff was charged with and found guilty of Reckless Endangerment, Menacing, and Criminal Possession of a Weapon. (Defendants' Rule 56.1 Statement ("Def. 56.1") ¶ 1; Ex. A, docket entry #29.) Specifically, Plaintiff alleges that he was falsely arrested that day for firing a handgun inside the park. (Complaint ("Compl.") ¶ IV.) He further alleges that Defendants found bullets and blueprints for former United States President Bill Clinton's Harlem offices in Plaintiff's vehicle and then suspected Plaintiff of plotting to assassinate the former president. (Id.) Plaintiff alleges that Defendants violated his civil rights by filing false police reports, planting evidence, unconstitutionally interrogating him, and offering perjured testimony to secure Plaintiff's conviction and sentence. (Id.) Plaintiff further alleges that Defendants illegally seized Plaintiff's car and other property "outside the scope of the search warrants" and did not properly voucher items belonging to Plaintiff. Id. In addition, Plaintiff raised claims against then-Kings County Assistant District Attorney Avery Mehlman and Kings County District Attorney Charles Hynes. (Id.)

By Memorandum and Order dated April 1, 2004, this court granted Plaintiff's request to proceed *in forma pauperis* and dismissed Plaintiff's non-property related claims and all claims as to Defendants Danchuk, Van-Casteren, Pepe, Mehlman and Hynes. Kneitel v. Danchuk, No. 04-CV-0971 (NGG), slip op. at 6 (E.D.N.Y. March 24, 2004) ("April 1, 2004 M&O") (docket entry #3). In that M&O, I found Plaintiff's claims for false arrest and malicious prosecution to be

foreclosed by the Supreme Court's holding in Heck v. Humprey, 512 U.S. 477 (1994). (See April 1, 2004 M&O at 3-4.) I also held that Plaintiff's police interrogation claim could not be the basis of a § 1983 action, finding Miranda v. Arizona, 384 U.S. 436 (1966), to afford a procedural safeguard rather than a constitutional right. (April 1, 2004 M&O at 4.) I also dismissed Plaintiff's claims against defendant prosecutors due to their absolute immunity under § 1983 in suits seeking damages for acts carried out in their prosecutorial capacities. (Id. at 5-6.) However, I permitted Plaintiff to proceed solely with his illegal seizure claim against Defendants Lubrano, Orrico and Harrison, noting that the Second Circuit has held that an actionable illegal seizure claim exists when: (1) a plaintiff has not been given adequate notice of the proper procedures for reclaiming his property; or (2) the procedures were not adequate to satisfy the requirements of due process. (Id. at 5 (citing Larkin v. Savage, 318 F.3d 138, 141 (2d Cir. 2003).)

With regard to Plaintiff's property-related claims, there are a number of undisputed facts, as follows:

After Defendants arrested Plaintiff, Defendants Lubrano and Orrico discovered Plaintiff's 1992 red Acura parked near a fire hydrant, brought it to the precinct, and conducted an inventory search. (Def. 56.1 ¶¶ 2-5.) All property in the car was vouchered, some as arrest evidence and some for safekeeping. (Id. ¶ 6.) The property included gunshells and pictures of Plaintiff dressed in a Nazi uniform. (Id. ¶ 8.) Plaintiff was not given a property voucher at the time of the inventory search of his car. (See Transcript of Proceeding before New York State Supreme Court Justice Edward Pincus at Declaration of Seth D. Eichenholtz ("Eichenholtz Decl.") Exhibit D (docket entry #29).)

Defendant Orrico is a sergeant with the New York City Police Department ("NYPD").

Orrico's involvement, according to Plaintiff, was that "[a]s a supervisor, it was his requirement to tell Officer Lubrano that [Plaintiff] should have been given the property vouchers" and that Orrico "was the one who actually seized the vehicle." (Id. ¶ 12 (citing Plaintiff's Deposition at Eichenholtz Decl. Exhibit E ("Pl. Dep.")).)

Defendant Lubrano is an NYPD officer. Lubrano's involvement, according to Plaintiff, was that, as the officer in charge of Plaintiff's vehicle, he "allowed the NYPD auction proceeds unit to sell" Plaintiff's automobile. (Id. ¶ 13 (citing Pl. Dep. at Eichenholtz Decl., Ex. E).)

Defendant Harrison is an NYPD detective. Harrison's involvement, according to Plaintiff, was limited to "conducting searches of [P]laintiff's home and storage facilities, seizing property from those places, and not providing [P]laintiff or his wife with copies of vouchers." (Id. ¶ 15 (citing Pl. Dep. at Eichenholtz Decl., Ex. E.) It is further not disputed that Harrison applied for and obtained search warrants for Plaintiff's apartment and then, along with other officers, executed the warrant. (Def. 56.1 ¶¶ 16, 17.) Among other things, while executing the warrant on Plaintiff's apartment, Harrison found and vouchered a Tech-9 automatic weapon. (Id. ¶ 19.) Furthermore, Harrison learned of two storage facilities registered in Plaintiff's name, one on Bay 19th Street in Brooklyn and one on Shore Parkway in Brooklyn. (Id. ¶ 20.) Harrison acquired warrants to search those facilities and searched one of those facilities. (Id. ¶ 21.)

Plaintiff attempted to recover his property on August 15, 2001 and was permitted to recover only property vouchered for safekeeping, not property the Kings County District Attorney's Office ("DA's Office") still stated that it needed to hold as arrest evidence. (Id. ¶¶ 23, 24.) On May 21, 2001, Plaintiff wrote to Defendant Harrison and another NYPD official, Captain Richard Capalongo, requesting that the NYPD inform Plaintiff of the whereabouts of his

4

property and asking for copies of the property vouchers. (See R & R at 2-3 (citing Letters to Harrison and Capalongo, Exhibit U, attached to Plaintiff's Reply).) Capalongo responded on July 6, 2001 and told Plaintiff his property was being held and that Plaintiff could retrieve vouchers for his property at the precinct upon his release from custody, which happened in late July 2001. (Id.) After his release, Plaintiff claims he took numerous steps that are reviewed in Judge Bloom's R & R to locate his vehicle. (See R & R at 2-3.)

When Plaintiff "went to claim his vehicle it had already been inadvertently sold at auction by the New York Police Department." (Def. Motion at 3.) NYPD released Plaintiff's vehicle for sale at auction on July 25, 2001 and, at the point that Plaintiff learned that his vehicle was sold in late July 2001, he had not acquired a release for his vehicle from the DA's Office. (Def. 56.1 ¶¶ 26, 27.) The defendants did not issue Plaintiff a voucher for any of his seized property until about September or October 2001, when the DA's Office gave it to Plaintiff's criminal defense attorney. (R & R at 2 (citing Pl. Dep. at 60-66); Def 56.1 ¶ 27.)

Plaintiff brought this suit pursuant to 42 U.S.C. § 1983 alleging *inter alia* that Defendants unlawfully seized his automobile and unlawfully barred him access to his property in a storage unit registered in his name. After my March 24, 2003 M&O dismissing claims against Defendants Danchuk, Van-Casteren, Pepe, Mehlman, and Hynes, the remaining defendants, Orrico, Lubrano, and Harrison, moved for summary judgment on June 13, 2005, alleging that Plaintiff has not presented evidence of constitutional violations on the illegal seizure claims and that they are immune from liability. (See Defendant's Motion for Summary Judgment dated June 13, 2005 ("Def. Mot.")) (docket entry #29.) Plaintiff responded to Defendants' motion for summary judgment but did not include a separate Rule 56.1 statement. By Memorandum and Order dated October 31, 2005, taking into consideration Plaintiff's *pro se* status, I held Defendant's motion in abeyance until November 30, 2005 for Plaintiff to resubmit papers that

include a Rule 56.1 statement that corresponds to Defendants' Rule 56.1 statement. (See Memorandum and Order dated October 31, 2005 ("October 31, 2005 M&O") (docket entry #34). Plaintiff did submit additional opposition to the motion on June 13, 2005 (see docket entry #36) but did not respond to Defendants' 56.1 statement. I then referred Defendants' motion to Judge Bloom on April 7, 2006 for an R & R, which Judge Bloom issued on January 24, 2007. Since that R & R, both Plaintiff and Defendants submitted timely statements of objections to the R & R, thereby requiring this court to make a *de novo* review of all portions of the R & R to which the parties specifically objected. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

In her R & R, Judge Bloom recommended that I grant Defendant's Summary Judgment Motion in part and deny it in part. Specifically, she recommended that I grant Defendants' Motion with regard to the alleged seizure of Plaintiff's storage units and their contents and that I deny Defendants' Motion with regard to the seizure of Plaintiff's automobile. Specifically, as to the vehicle, Judge Bloom reasoned that "issues of material fact remain as to whether [P]laintiff was given *proper* notice of the procedures for recovery and as to whether the procedures are adequate to satisfy due process." (R & R at 13 (emphasis in original).) Judge Bloom found that Plaintiff, in not being given property vouchers, may not have been given proper notice of the procedures for recovering his vehicle and, because of these "unanswered questions," she recommended that I deny grant summary judgment.

With regard to the storage locker claim, Judge Bloom recommended that I grant summary judgment in favor of Defendants since Plaintiff's allegations are conclusory and unsupported by any evidence. Plaintiff has not objected to her recommendation that I dismiss this claim. For the reasons that follow, I agree with her recommendation that Plaintiff has failed to carry his burden with regard to the storage locker claims and find no error in her judgment.

Defendants object to the part of the R & R that recommends denial of their motion for three reasons: (1) Judge Bloom failed to recognize that, even assuming there was inadequate notice to Plaintiff, Plaintiff did not put forth any evidence showing the existence of an *intentional* violation of his constitutional rights by Defendants; (2) Judge Bloom incorrectly attached the possibility of liability to *these* three individual defendants, none of whom had final decision-making powers over the policy at issue; and (3) Defendants are entitled to qualified immunity. I discuss each objection in turn.

## II.    Discussion

### A.    Legal Standard

Summary judgment is appropriate when, after reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 95 (2d Cir. 1998). Defendants and Plaintiff have filed timely objections to Judge Bloom's R & R, and I must consider *de novo* the recommendations to which they object. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

### B.    The Due Process Right at Issue: Notice of Post-Deprivation Remedies

Before first delving into Defendants' objections to the R & R, it is worth reviewing what constitutional right Plaintiff is alleging Defendants violated. Plaintiff states that Defendants deprived him of his vehicle without due process of law by failing to provide him with adequate notice of the procedures for recovering property seized by NYPD. (See Compl. ¶ 3; R & R at 7.)

42 U.S.C. § 1983 requires that a plaintiff establish (1) that he has been deprived of a federally protected right, and (2) that he was deprived of that right by a person acting under color of state law. American Mfrs. Mutual Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). In order to

assert a claim under the Due Process Clause of the Fourteenth Amendment for the loss of his personal property upon his arrest, a plaintiff must allege that the post-deprivation remedies available under state law were inadequate or that he was never given proper notice of the procedures. See Larkin v. Savage, 318 F.3d 138, 141 (2d Cir. 2003) (discussing Alexandre v. Cortes, 140 F.3d 406 (2d Cir.1998)).

## 1.    Location of Notice

Notice of procedures for recovering seized city property can be found in a few places: the reverse side of NYPD property vouchers, the New York City Administrative Code, and the New York Code of Rules and Regulations of the City of New York ("Rules and Regulations"). The procedures described on the reverse side of the NYPD property vouchers, as well as the requirement that they be printed there, derive from an order by Judge Morris E. Lasker,[1] which was issued after the Second Circuit's decision in McClendon v. Rosetti, 460 F.2d 111 (2d Cir.1972). In McClendon, the Court held that the New York City Administrative Code § 435-4.0[2], which placed the burden of initiating property recovery proceedings upon the claimant, was unconstitutional as applied to persons with claims upon non-contraband items not needed as evidence for two reasons: (1) its notice requirements were deficient; and (2) the statute

.

---

[1] McClendon v. Rosetti, 70 Civ. 3851 (S.D.N.Y. July 15, 1974) (unpublished order) ("Lasker Order").

[2] Since McClendon, this section of the New York Administrative Code has been renumbered as Admin. Code § 14-140. In relevant part, the statute provides that all property "suspected of having been used as a means of committing crime or employed in aid or furtherance of crime . . . shall be given . . . into the custody of and kept by the property clerk." Section 14-140(e)(1) states that a person who uses property in aid of a crime shall not be considered the lawful claimant entitled to that property. See Matter of Property Clerk of N.Y. City Police Dept. v Ferris, 77 N.Y.2d 428, 430 (N.Y. Ct. App. 1991).

unconstitutionally put certain burdens of proof on defendants seeking their property. Id. at 116.

The court specifically noted that the ordinance lacked "any meaningful requirement of notice."

Id. at 115. Following McClendon, Judge Lasker set forth certain procedures for the city to follow

governing the recovery of seized property in an unpublished order issued on July 15, 1974

("Lasker Order"). See Butler v. Castro, 896 F.2d 698, 700 (2d Cir.1990). The Second Circuit

has since examined the Lasker Order and has stated:

> Under the Lasker Order, a voucher must be given to an arrestee for
> non-contraband property seized. The voucher must also give notice of the
> procedures to be followed to recover such property. A claimant must
> make a demand upon the property clerk for his property or money within
> 90 days of the earlier of (i) the termination of the criminal proceeding, or
> (ii) the issuance by the District Attorney of a release indicating that the
> property or money is not needed as evidence. The City must, within ten
> days of a timely demand, either return the item or items in question or
> initiate judicial action to authorize their continued detention. In the
> absence of a timely demand, the property clerk may dispose of the
> property.

Id. at 702-03.

Since the Lasker Order, the Administrative Code has not been changed to provide the

notice that Judge Lasker and the Second Circuit have found to be required by the Due Process

Clause. As one court noted, "[t]o date, and without explanation, the City has failed to amend

[Administrative Code] § 14-140(e)(1) to incorporate the Lasker Order, despite the passage of

more than twenty-three years since its issuance." Mackey v. Property Clerk of New York City

Police Dept., 26 F. Supp. 2d 585, 589 (S.D.N.Y. 1998). The New York City Administrative

Code still evidently remains unamended to this day. See Palacio v. City of New York, 2007 WL

1556525, *4 (S.D.N.Y. 2007).

In addition to the New York Administrative Code, the Rules and Regulations evidently

contain a description of the procedures for recovering seized property. The R & R reviews some

of the procedures contained in the Rules and Regulations. As the R & R points out, when NYPD officers seize a vehicle in connection with an arrest, NYPD is required to issue a voucher to the arrestee, and the arrestee is given the opportunity to verify the accuracy of the voucher and sign. 38 R.C.N.Y. § 12-32(a-b, d). The arresting officer may determine at the time of seizure that the vehicle is needed as possible evidence for the criminal proceeding and mark the vehicle as "arrest evidence." 38 R.C.N.Y. § 12-31. If the District Attorney subsequently agrees with this determination, the property is marked as "trial evidence." Id. Within 120 days of the termination of a criminal proceeding related to the seized property (or within 270 days, if the property is deemed evidence and requires a release from the DA's office), a claimant may bring a demand to recover the vehicle. 38 R.C.N.Y. § 12-35(c-d). "The procedure for making a demand to recover a vehicle is detailed on the back of the voucher as well as in the published Rules and Regulations of the City of New York." (R & R at 7 (citing 38 R.C.N.Y. § 12-32(e)).)

## 2.    Requirement of Adequate Notice

The Second Circuit has made it clear that a plaintiff may proceed in a § 1983 action alleging a violation of due process rights for failure to provide adequate notice of the procedure by which he could recover seized property. Butler v. Castro, 896 F.2d 698 (2d Cir. 1990).[3] In that case, the Court of Appeals held that the defendants' failure to provide plaintiff with a

---

[3] In Butler, like the case at bar, the plaintiff alleged that the defendants sold his automobile improperly without notifying him of the procedures for recovering his property. Id. at 699. The Second Circuit held that the plaintiff, to whom the police did not provide a voucher when arrested, stated a valid due process claim and reasoned that "[a]n arrestee who fails to receive a voucher . . . would not know of the need to make a demand on the property clerk and the burden on the City either to return the property or bring a judicial action." Id. at 703. As the court noted, "the Administrative Code provides no assistance to an arrestee deprived of property because § 14-140 fails to 'reflect in any meaningful respect the actual practices of the Police Department and its property clerk or the existing procedures for reclaiming such property.'" Mackey, 26 F. Supp.2d 585 at 589 (quoting Butler, 896 F.2d at 703).

voucher explaining the procedures, the failure of the New York City Administrative Code to outline those procedures, and the "early, earnest, and documented attempts to recover [plaintiff's] property" were sufficient to state a due process claim. Id. at 703. Mackey, 26 F. Supp. 2d at 589-90, dealt with a similar situation in which the court denied a summary judgment motion by defendant New York City. In that case, the court found that the City's failure to amend the Administrative Code to outline the proper procedures gave rise to an inference that the defendant had violated the plaintiff's due process rights. Id. at 590.

Under these cases, it is clear that Plaintiff has alleged sufficient facts to go forward with a due process claim. Kneitel's car was seized, and it is undisputed that he was not provided with a voucher for it until September or October 2001, a few months after the car was sold at auction. He alleges that he made numerous phone calls to NYPD and was unable to learn the procedure for getting his car back or learn of the car's whereabouts. For instance, he alleges that he visited the NYPD property clerk's Brooklyn office on Gold Street. (R & R at 3 (citing Pl. Dep. at 23).) He also alleges that he was referred by the property clerk to another office "to obtain the voucher numbers for his property and to find out whether the property was being held as evidence or would be released." Id. He also alleges that he reached out to the DA's Office in early August 2001 requesting paperwork for the property, a request that was denied by letter dated August 15. Id. Thus, Plaintiff adequately alleges that he was not provided with a voucher, he was unable to learn of the procedures, and he was deprived of his property as a result.

While the New York Administrative Code section dealing with property recovery still has not been conformed to the mandates of Judge Lasker's order, it is of course a possibility that the Rules and Regulations correctly detail the procedure for recovering seized property. Although at least one court has recently implied that the Rules and Regulations have been amended to reflect

the constitutionally required procedures governing recovery of seized property, Palacio v. City of New York, 2007 WL 1556525, *4, No. 04 Civ.1990 (S.D.N.Y. May 31, 2007), in Larkin, 318 F.2d at 141, the Second Circuit reiterated its comment from Alexandre, 140 F.3d at 406, that "whether the procedures set forth in City Rule § 12 meet the requirements of due process is an open question in our Circuit." If the Rules and Regulations do give proper notice, that may ultimately preclude a § 1983 action based on inadequate notice of those procedures. However, as Defendants do not argue that they are entitled to summary judgment on the issue that the Rules and Regulations provide constructive notice, I will not rule on that issue at this time.

I also note that Defendants do not object to the R & R on the grounds that they fulfilled their obligations under the Due Process Clause by notifying Plaintiff of the procedures through which he could regain possession of his property. (See Def. Objections at 4 ("[E]ven assuming there was inadequate notice to plaintiff . . .").) Indeed, Defendants do not even argue that Plaintiff was not deprived of his constitutional rights. (See Defendant's Motion for Summary Judgment at 9 ("Here, there is no need to analyze whether the City of New York's policies in this regard are flawed").)

Even if they were making such an argument, however, at this stage of the litigation and accepting Plaintiff's factual allegations as true, I find that it is a matter of unresolved material fact whether that constitutional obligation was satisfied. Given these Second Circuit cases, I find that Plaintiff was constitutionally entitled to notice of the established procedures for recovering seized property. What is for certain is that the police officers did not give Plaintiff a voucher for the seized Acura, which is the standard method by which notice is provided. See Butler, 896 F.2d at 703. As a result of that, the only other manner in which Plaintiff could have ascertained the available recovery procedures would be through constructive notice though the

Administrative Code or Rules and Regulations, some or all of which may be misleading.

Taken together, then, the failure to provide a voucher, in conjunction with the misleading Administrative Code and the possibly inadequate Rules and Regulations, establish that there are material issues of fact about whether the due process procedures required by <u>McClendon</u> and <u>Butler</u> were followed. It may well be that Defendants are able to point to an updated statute that gives plaintiffs such as Kneitel constructive notice of his post-deprivation remedies[4]; however, they have not done so. Accordingly, given the record before this court. I reject the argument that the plaintiff cannot, as a matter of law, establish a due process violation with respect to his automobile-related claim.

### C.    Violation by These Three Individual Defendants

Defendant first objects to the R & R on the ground that there are no material issues of fact in this case as to whether *these* Defendants deprived Plaintiff of his constitutional rights. Defendants have objected, stating that no currently named individual Defendants are implicated in this claim. Given the record before me and Defendants' moving papers, I cannot find that there is no material factual disagreement about the roles of Defendants Orrico and Lubrano in the deprivation. Harrison, whose role is undisputed to be unrelated to the search and seizure of the automobile, for the reasons that follow, should be granted summary judgment since even Plaintiff concedes that he played no role whatsoever in the deprivation of his rights with regard to the automobile.

----

[4] Even if the Rules and Regulations provide notice. Defendants may still be liable if they neglected to provide Plaintiff with a hearing into the seizure. "Procedural due process generally requires some kind of hearing before the state deliberately deprives an individual of liberty or property." <u>McClary v. O'Hare</u>, 786 F.2d 83, 86 (2d Cir. 1986) (internal quotation marks and citations omitted). However, that issue is not currently before the court, and I am thus not addressing whether a hearing would have been required.

13

## 1. Rules Regarding Individual Liability

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) (quoting Rizzo v. Goode, 423 U.S. 362, 370-71 (1976)). "Accordingly, personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Id. (internal quotation marks and citation omitted). As the Second Circuit has explained, "[s]ince personal involvement is a question of fact we are governed by the general rule that summary judgment may be granted only if no issues of material fact exist and the defendants is entitled to judgment as a matter of law." Id. (citations omitted).

## I. Intentionality

Before reviewing the roles of the three individual defendants in the deprivation of Plaintiff's rights, I also pause to address one further objection they make: that each defendant must not only play an individual role in the deprivation but must additionally be found to have *intentionally* denied Plaintiff of his constitutional rights. Defendants cite Hampton v. McGinnis, 1992 WL 309553, at *2 (S.D.N.Y. 1992) (a due process claim based on deprivation of personal property "is cognizable as a federal claim only if there are '*intentional*, substantive violations of constitutional rights.'") (quoting Morello v. James, 810 F.2d 344, 348 (2d Cir.1987) (emphasis added)). They further quote Hampton: "Consequently, unless [a] plaintiff can bring forth some evidence showing intentional – not just negligent – denial of his property, [a court] must grant summary judgment to defendants." Id.

Defendants are mistaken. With regard to the element of intent, in Hudson v. New York City, 271 F.3d 62, 67 (2d Cir. 2001), the Second Circuit clearly held:

> Section 1983 does not require any intent to violate constitutional rights. See Caballero v. City of Concord, 956 F.2d 204, 206 (9th Cir. 1992) (stating that "[i]t is well established that specific intent is not a prerequisite to liability under § 1983") (citing Monroe v. Pape, 365 U.S. 167, 187, 81 S. Ct. 473, 5 L. Ed.2d 492 (1961), overruled on other grounds, Monell, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611). As a result, § 1983 plaintiffs need only demonstrate intent where the underlying constitutional deprivation, such as an equal protection violation under the Fourteenth Amendment, calls for it. See, e.g., Gelb v. Bd. of Elections, 224 F.3d 149, 154 (2d Cir. 2000) (requiring intentional or purposeful discrimination for a § 1983 action invoking the Equal Protection Clause to remedy errors in an election process). And § 1983 does not itself import an intent standard into an underlying constitutional deprivation that lacks such a requirement.

Id. In this case, the underlying constitutional deprivation – inadequate notice of post-deprivation state remedies – does not require intent. The lack of notice itself gives rise to the constitutional violation.

I will also address the one case on this point that Defendants brought to my attention, Hampton (which cites to a Second Circuit case, Morello). For purpose of background, in Parratt v. Taylor, 451 U.S. 527 (1981), the Supreme Court held that the negligent loss or destruction of property by state officials could constitute a due process "deprivation" but that the existence of adequate state remedies to redress the wrong meant that the deprivation was not "without due process of law." The Court, in Daniels v. Williams, 106 S. Ct. 662 (1986), expressly overruled Parratt to the extent that it held negligently inflicted injuries to property not to be the kind of deprivations with which the Due Process Clause is concerned. However, the Daniels Court cited with approval Hudson v. Palmer, 468 U.S. 517, 530-34 (1984), which had extended Parratt's state action holding to intentional deprivations of property by state officials. Defendants cite to Morello, 810 F.2d at 344, 347, a case in which the constitutional violation involved a prison guard intentionally destroying a *pro se* plaintiff's legal work product (i.e., the prison guard threw

15

out the plaintiff's papers). The Second Circuit found that to be not just an intentional deprivation of property but also an intentional obstruction of the prisoner's access to the courts. Id. The Court wrote that the "intentional obstruction of a prisoner's access to the courts is precisely the sort of oppression that the Fourteenth Amendment and section 1983 are intended to remedy." The court however, specifically distinguished Morello from Paratt, stating that "[i]ntentional, substantive violations of constitutional rights are not subject to the rule of Paratt." Defendants' reliance on the precedential rule of Morello is misplaced insofar as it argues that a deprivation of property must be intentional to give rise to § 1983 liability[5]; Morello simply does not hold that. Rather, Morello deals with the universe of property deprivations where the deprivation itself is an intentional, substantive violation of a constitutional right, such as right of access to the courts. See id. at 346 ("[t]he right of access to the courts is substantive rather than procedural").

In the instant case, the seizure of the car itself does not fall under Morello since it implicates no substantive rights unto itself; rather, the issue is – as in Paratt – whether the state remedies to redress the wrong were adequate and thus not "without due process of law." 451 U.S. at 527. Thus, Defendants' cited cases are inapposite to the instant dispute, since the issue is not whether Defendants intentionally denied him of any property; they most certainly did, since the seizure of the automobile was assuredly intentional. The issue here is also not whether Defendants intentionally denied him of his vouchers: again, not a substantive violation of a constitutional right. The purported constitutional violation here deals with Defendants' alleged failure to provide Plaintiff with adequate notice of his post-deprivation remedies, not to

_____

[5] I decline to follow Hampton, 1992 WL 309553, at *2, for the same reason, that it apparently misconstrues the reasoning set forth by the Court of Appeals in Morello.

wrongfully deny him of his property. Plaintiff alleges that Defendants intended not to give him the property vouchers until after the car was sold (see Plaintiff's Reply to Defendants' Objection of the Report and Recommendation of the Honorable Lois Bloom dated January 26, 2007 ("Pl. Reply") at 4, docket entry #43), a claim that Defendants do not refute. Nor could they since, as they themselves concede, Plaintiff was not given the vouchers until September or October 2001, months after his car was sold. Thus, I find Defendants' cited cases on intentionality to be immaterial to whether the Due Process Clause was violated in this case through insufficient notice.

## 2.    Analysis of Individual Liability

Turning to the issue of individual liability, the question is whether any jury could find that Lubrano, Orrico, and Harrison were *personally* involved in a deprivation of Plaintiff's constitutional rights. Construing Plaintiff's *pro se* complaint liberally, as I must, see Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir. 1995), I conclude that he has not raised an issue of material fact regarding Harrison's personal involvement in allegedly depriving him of his automobile. However, that substantial questions remain as to whether Lubrano and Orrico were personally involved in the deprivation of Plaintiff's notification rights. As discussed below, Plaintiff has adduced sufficient evidence to create a material question of fact as to whether Lubrano and Orrico were personally involved in the failure to provide notice.[6]

---

[6] It is not entirely clear what activity Defendants must have been personally involved with in order to be liable. It may be that Defendants must have been personally involved in the failure to give notice in order to be liable. Alternatively, Defendants involvement in the seizure of the vehicle may be sufficient to trigger liability. Neither party has briefed this issue or argued for one of these standards. Defendants cite no precedent in support of the proposition that they must have been personally involved in the failure to give notice to be liable. At this time, the court need not reach this question because, as discussed below, there is a material question of

17

### i.   Defendant Harrison's Personal Involvement

Both parties agree that Harrison's role in Plaintiff's case came after the seizure of the automobile and was limited to obtaining and executing the search warrants of Plaintiff's home and storage facilities. (Def 56.1 ¶ 15; Pl. Dep. at Eichenholtz Decl., Ex. E.)  With regard to this claim, the only evidence that Plaintiff puts forward is that NYPD put a "hold" on his storage areas, denying him access to them.  The R & R is correct that Plaintiff's claims regarding these properties are wholly conclusory.  Other than oblique reference to a conversation with a man named John at the private self-storage facility where Harrison and others swore out a search warrant, Plaintiff puts forth no evidence of a hold on his property or of any other constitutional violation.  In his objection to the R & R, Plaintiff further puts forth conclusory allegations that "[k]nowingly false and misleading information was used in order to obtain four search warrants." (Pl. Reply at 4.)  Plaintiff has not objected to Judge Bloom's recommendation that I grant summary judgment for Defendants on this claim and accordingly dismiss it.  I adopt Judge Bloom's R & R with respect to these properties, finding that there is no evidence to support the claims for this property and that no reasonable jury could find for Plaintiff.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986) (holding that once a party shows that there is an absence of evidence supporting the non-moving party's case, the non-moving party has the burden to go beyond the mere conclusory allegations of his pleadings and show that there is a material fact issue for trial); Almonte v. Florio, 2004 WL 60306, at *3 n.10 (S.D.N.Y. 2004) ("a plaintiff's *pro se* status does not allow him to rely on conclusory allegations or unsubstantiated speculation to overcome a motion for summary judgment").

---

fact as to whether Defendants were indeed personally involved in the failure to give notice.

Furthermore, given Harrison's lack of involvement in the search, seizure or vouchering of Plaintiff's vehicle, I decline to adopt Judge Bloom's recommendation against summary judgment in favor of Defendant Harrison. I find that it is not a disputed fact that Harrison's personal involvement was limited to the claims Judge Bloom recommended dismissing, a determination with which I agree. Accordingly, summary judgment is granted as to defendant Harrison on the automobile-related claim.

### ii. Defendant Lubrano and Orrico's Personal Involvement

As noted above, Lubrano's involvement, according to Plaintiff, was that, as the officer in charge of Plaintiff's vehicle, he "allowed the NYPD auction proceeds unit to sell" Plaintiff's automobile. (Def. 56.1 ¶ 13 (citing Plaintiff's Deposition at Eichenholtz Decl., Ex. E).) As Defendants elaborate: "[D]efendant Lubrano was responsible for filling out the vouchers for Plaintiff's vehicle, inventorying its contents, and filling out vouchers for its contents." (Defendants Memorandum of Law in Support of their Objection to the Report and Recommendation of the Honorable Lois Bloom dated February 6, 2007 ("Def. Objections") at 5, docket entry #41.) It is further undisputed that Orrico supervised Lubrano and that Orrico, not Lubrano, was the one who actually drove Plaintiff's car back to the precinct. (Def. 56.1 ¶ 12; Testimony of Orrico at Eichenholtz Decl., Ex. E at 10-11.) Plaintiff alleges that Lubrano "allowed" NYPD to sell his car.[7] (Compl. ¶ 3.)

---

[7] In their objections, Defendants are quick to seize on the part of the R & R where Judge Bloom wrote that Defendants are "correct[ to] note that plaintiff fails to provide evidence of defendant Lubrano's alleged personal involvement in the sale of plaintiff's vehicle." (Def. Objections at 5 (citing R & R at 10).) Defendants write that, thus, "plaintiff's claims against Lubrano, limited to that very basis, must be dismissed at this stage." Id. I disagree with that assessment since, again, the issue is not whether Lubrano played an individual role in an unlawful sale of Plaintiff's vehicle but whether Lubrano played an individual role in depriving

Likewise, Sergeant Orrico's involvement, according to Plaintiff, was that "[a]s a supervisor, it was his requirement to tell Officer Lubrano that [Plaintiff] should have been given the property vouchers" and that "he was the one who actually seized the vehicle." (Def 56.1 ¶ 12 (citing Pl. Dep. at Eichenholtz Decl. Exhibit E).) The Second Circuit in <u>Moffitt v. Town of Brookfield</u>, 950 F.2d 880, 886 (2d Cir. 1991), dealt with the issue of supervisory responsibility in a § 1983 claim and held that:

> A defendant may be personally involved in a constitutional deprivation within the meaning of 42 U.S.C. § 1983 in several ways. The defendant may have directly participated in the infraction. A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong. A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue. Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event.

Orrico's involvement in this case may well fall within one or more of the <u>Moffitt</u> categories. Given a purported constitutional violation in depriving Plaintiff of notice regarding post-depravation remedies, Plaintiff has specifically alleged that "Orrico guided and advised Lubrano and . . . is therefore responsible for the blatant deliberate deprivation of plaintiff's constitutional rights. It is clear from the sworn testimony of both defendants that they had close contact·and conversations regarding the vehicle seizure and . . . property vouchering process." (Plaintiff's Response to Defendant's Motion for Summary Judgment at 8 ("Pl. Opp. Brief"), docket entry #36.) Defendants also acknowledge that Orrico was Lubrano's supervisor and "ordered" Lubrano to search Plaintiff's automobile. (Def. 56.1 ¶ 5.)

---

Plaintiff of his post-deprivation remedies by not giving Plaintiff the vouchers.

Given this analysis, Plaintiff's due process rights may have been violated due to lack of constructive notice of the state's post-deprivation remedies available to him. Since Orrico and Lubrano indisputably participated in the vehicle vouchering process, they may well also be part of the failure to give Plaintiff the vouchers. Defendants bear the burden of establishing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). In this case, however, Defendants have not presented this court with an adequate exposition about what the municipal rules are with regard to giving criminal defendants copies of vouchers for seized property. It is possible that municipal ordinances or internal NYPD and DA's Office directives, following the Lasker Order, require arresting officers and their supervising sergeants immediately to provide vouchers to someone whose vehicle has been seized. Alternatively, it may be that an ordinance or directive specifically states that officers should never give a voucher to a defendant but should, instead, turn it over to the DA's Office for review.

Thus, without knowing what those regulations or directives are, it is impossible for the court to grant summary judgment in favor of Orrico and Lubrano based on their personal involvement. Defendants have failed to meet their burden to show that Orrico and Lubrano have no personal involvement in the deprivation since they have not made a *prima facie* showing of what those two defendants' procedural responsibilities indeed were.

### D. Liability of These Individual Defendants for a Municipal Policy Issue

Defendants further object to the R & R, stating that it did not properly differentiate between Defendants as individuals and the municipality of New York City or NYPD, and thus it imputed policymaking responsibility to three individuals without Plaintiff having put forth any

evidence of that responsibility. Defendants objected to the notion of holding individuals responsible for what Plaintiff calls a "systematic refusal . . . to turn over property vouchers." (See R & R at 7 (quoting Plaintiff's Opposition Brief at 19 ("Pl. Opp. Brief"), docket entry #36)). Defendants also argue that the R & R incorrectly applied a question of the constitutionality of a municipal policy in analyzing the liability of individual defendants who do not make policy for New York City or NYPD. Defendants assert that they should not have the possibility of liability attached to them, as none had final decision-making powers over the policy at issue.

The R & R states that Plaintiff's case presents parallels to Butler, 896 F.2d at 700, and Larkin, 318 F.3d at 138, in which the Second Circuit found that the failure of the police to give a plaintiff a property voucher laying out the state's procedures for property recovery forced those claimants to rely, in part, on a defective part of the New York City Administrative Code explaining those procedures. Thus, the court found that there were material issues of fact as to whether those plaintiffs had been deprived of due process because they may not have been properly presented with the state remedies available to them for recovery.

In Butler, the plaintiff sued New York City and a number of individual defendants (including individual police officers and detectives) for the return of property which he alleged was confiscated from him at the time of his arrest without adequate notice of the city's property recovery procedures. The Second Circuit held that because the New York Administrative Code did not give accurate notice of the city's procedures for return of confiscated property, the plaintiff had stated a proper due process claim. Id. at 703-04. As a result, the Second Circuit reversed the court's grant of summary judgment in favor of the defendants, including the individual police officers and detectives. Indeed, it is true that Larkin dealt not with a summary

22

judgment motion but a *sua sponte* dismissal of a complaint, but the same principle held true: the Second Circuit held that the plaintiff's complaint should not have been dismissed as frivolous even against individual police officers because, based solely on the complaint, the individual defendants did not have a dispositive defense.

Defendant appears to assert that a key difference between these cases and the instant case is that Plaintiff here, unlike in Butler, chose not to sue New York City but instead sued three police officers in their individual capacities. Defendants point out that New York City and NYPD, as an organization, have never been defendants in this lawsuit. "[N]o discovery was taken, nor was any evidence offered, regarding the City's policies and their adequacy to satisfy plaintiff's due process rights." (Def. Objections at 10.) Defendants further object that it would be unfair for me to convert Plaintiff's claim against the city – one in which he challenges the state procedures for property retention – to one against these three defendants.

The Supreme Court has been clear that personal-capacity lawsuits seeking to impose individual liability upon a government officer for actions taken under color of state law are proper. "On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Moreover, "the plaintiff in a personal-capacity suit need not establish a connection to governmental 'policy or custom.'" Hafer v. Melo, 502 U.S. 21 (1991) (quoting Kentucky, 473 U.S. at 166-167). A public official, in order to be held liable in his personal capacity under § 1983, must directly participate in the violation or fail to remedy the violation after learning of it through a report or an appeal. Wimmer v. Suffolk County Police Dept., 176 F.3d 125 (2d Cir. 1999). Thus, Defendants are wrong to object that "[n]one of these

23

defendants are final policy makers of the City of New York." (Def. Objections at 10.)

Defendants' objection inaccurately applies <u>Anthony v. City of New York</u>, 339 F.2d 129, 139 (2d Cir. 2003) for the proposition that an individual defendant must have final decision-making authority for the policy at issue in order for any liability under § 1983 to attach. (Def. Objections at 10 (<u>citing Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 483-84 (1986)).) In <u>Anthony</u>, the plaintiff sued police officers for a deprivation of her constitutional rights under § 1983 both in their individual capacity and in their official capacity. The Court ruled that § 1983 liability could not attach to the defendant police officers in their *official* capacity because there was a lack of evidence indicating that the warrantless seizure at issue in that case was conducted pursuant to an official governmental policy or custom. The Court, in so ruling, specifically noted that the individual sued must be responsible for "establishing final government policy in order for *municipal liability* to attach." <u>Anthony</u>, 339 F.2d at 139 (emphasis added). The court in <u>Anthony</u>, however, did not make any such finding with regard to the defendants insofar as they were sued in their *individual* capacities. Rather, the Court found no individual liability in that case based on a wholly different reason – that the warrantless entry was justified by exigent circumstances. In the case at bar, Defendants are being sued in their individual capacity: it is simply besides the point whether Defendants were responsible for the government policy. What matters is that Plaintiff was not given the property voucher and thus may not have received adequate notice of the procedure for obtaining his vehicle. Since Defendants are being sued in their individual capacity, that they are not city policymakers is not a reason to grant summary judgment.

## E. Qualified Immunity

Finally, given the above, I decline to grant summary judgment for Defendants on the ground that they are entitled to qualified immunity. Defendants object to the R & R, stating that they are entitled to qualified immunity (1) "because . . . there was no personal involvement in the deprivation of a clearly established constitutional right" (Def. Objections at 14), and (2) "their actions in deciding to seize plaintiff's vehicle was . . . objectively reasonable" (id.). The R & R recommended that "qualified immunity should not be granted." (R & R at 11.) As a preliminary matter, I cannot adopt that recommendation since, at this stage, my review is limited to determining whether there exists a material factual disagreement about whether qualified immunity should be granted, not whether to actually grant the immunity. That said, I find that such a factual disagreement does, indeed, exist with respect to this issue, and I cannot grant summary judgment as a matter of law.

### 1. Qualified Immunity Standard

The Second Circuit has been clear that "[q]ualified immunity shields police officers acting in their official capacity from suits for damages under . . . § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known." Holeman v. City of New London, 425 F.3d 184, 189 (2d Cir. 2005) (internal quotation marks omitted). "The objective element of this test requires the court to look beyond the generalized constitutional protection, such as the right to be free of unreasonable searches and seizures, and to determine whether the law is clearly established in a more particularized sense." Kerman v. City of New York, 261 F.3d 229, 236 (2d Cir. 2001). Even where the rights are clearly established, a defendant is entitled to qualified immunity if it was objectively reasonable for the

defendants to believe that their acts did not violate those rights. See Anderson v. Creighton, 483 U.S. 635, 638 (1987); Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987). The official does not have such immunity where the "contours of the right" were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640.

## 2.    Analysis

The R & R, for the reasons reviewed therein, is correct that the right to notice of post-deprivation remedies is clearly established. However, the second part of the qualified immunity standard – whether Defendants' actions were objectively reasonable – warrant discussion here. In this case, as explained above, I do not have before me a sufficiently developed record to rule, as a matter of law, that Defendants' actions were objectively reasonable. Indeed, it may very well be that Defendants objectively and reasonably relied on well-established procedures governing police officers', sergeants', and detectives' roles in handing out property vouchers; however, not knowing what the rule itself is, I cannot rely on conjecture. Thus, I cannot grant summary judgment in favor for Defendants on the qualified immunity issue.

Davis v. City of New York, 2007 WL 755190, *15 (E.D.N.Y. February 15, 2007) dealt with a case in which there was a disputed issue of material fact as to whether the circumstances would allow an objectively reasonable officer to believe that probable cause existed to arrest and then prosecute the plaintiffs. The court found that the defendants were not entitled to qualified immunity at the summary judgment stage. Id. (citing Weyant v. Okst, 101 F.3d 845, 858 (2d Cir. 1996) (holding that where police officers' version of facts is "sharply disputed," "the matter of the officers' qualified immunity therefore cannot be resolved as a matter of law")); Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994) ("[t]hough [qualified] immunity ordinarily should be

decided by the court, that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required.") (internal citations and quotation marks omitted); Webster v. City of New York, 333 F. Supp. 2d 184, 206 (S.D.N.Y. 2004) (denying qualified immunity as a matter of law for malicious prosecution claim where dispute existed as to facts which constituted alleged basis for probable cause); Neal v. City of Harvey, Ill., 1 F. Supp. 2d 849, 858 (N. D. Ill. 1998) (finding that issues of fact precluded summary judgment on, among other things, malicious prosecution claim where plaintiff asserted that officer planted drugs on him).

## III.    Conclusion

For the reasons described above, I adopt the R & R in part and reject the R & R in part, and overrule the Defendants' objections in part and sustain the Defendants' objections in part. With regard to Plaintiff's automobile-seizure claim, I grant summary judgment in favor of Defendant Harrison, and deny summary judgment for defendants Lubrano and Orrico. With regard to Plaintiff's storage-locker claim, I grant summary judgment in favor of all three defendants.


SO ORDERED.

Dated: Brooklyn, New York
     July 6 , 2007

/signed/

NICHOLAS G. GARAUFIS
United States District Judge

27