UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MICHAEL KNEITEL,

                        Plaintiff,

            -against-                       **MEMORANDUM & ORDER**

MICHAEL DANCHUK, COSMO LUBRANO          04-CV-0971 (NGG) (LB)
JOSEPH ORRICO, WAYNE HARRISON,
SALVATORE VAN-CASTEREN, LUIS PEPE,
AVERY MEHLMAN, CHARLES HYNES,

                      Defendants.
-----------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

      Pro se Plaintiff Michael Kneitel ("Kneitel" or "Plaintiff") brought the instant action pursuant to 42 U.S.C. §1983, alleging that Defendants violated his constitutional rights during the course of arresting and prosecuting Plaintiff. Plaintiff's claims against Defendants Cosmo Lubrano ("Lubrano") and Joseph Orrico ("Orrico") for searching and seizing his automobile survived Defendants' motion for summary judgment. By Memorandum & Order dated March 24, 2004 ("March 24, 2004 M&O") (Docket Entry #3), the court (1) dismissed Plaintiff's claims concerning false arrest, malicious prosecution, <u>Miranda</u> violations, and prosecutorial misconduct, and (2) dismissed the claims against Defendants Michael Danchuk ("Danchuk"), Salvatore Van-Casteren ("Van-Casteren"), Luis Pepe ("Pepe"), Avery Mehlman ("Mehlman"), and Charles Hynes ("Hynes"). Subsequently, by Memorandum & Order dated July 6, 2007 ("July 6, 2006 M&O") (Docket Entry #50), the court (1) granted summary judgment in favor of Defendant Wayne Harrison ("Harrison") and denied summary judgment for Lubrano and Orrico with regard to Plaintiff's automobile-seizure claim, and (2) granted summary judgment in favor of Harrison, Lubrano, and Orrico with regard to Plaintiff's storage-locker claim.

The court is now presented with two motions brought by Plaintiff: (1) a motion to reconsider parts of its March 24, 2004 and July 26, 2006 M&Os, and (2) a motion to amend the Complaint. For the reasons that follow, both motions are denied.

**I.      Background**

Plaintiff brought this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights by committing various illegal acts in the course of arresting him on February 28, 2001 inside Gerritsen Park in Brooklyn, New York. As a result of his arrest, Plaintiff was charged with and found guilty of Reckless Endangerment, Menacing, and Criminal Possession of a Weapon. (Defendants' Rule 56.1 Statement ("Def. 56.1") ¶ 1; Ex. A, docket entry #29.) Specifically, Plaintiff alleges that he was falsely arrested that day for firing a handgun inside the park. (Complaint ("Compl.") ¶ IV.) He further alleges that Defendants found bullets and blueprints for former United States President Bill Clinton's Harlem offices in Plaintiff's vehicle and then suspected Plaintiff of plotting to assassinate the former president. (Id.) Plaintiff alleges that Defendants violated his civil rights by filing false police reports, planting evidence, unconstitutionally interrogating him, and offering perjured testimony to secure Plaintiff's conviction and sentence. (Id.) Plaintiff further alleges that Defendants illegally seized Plaintiff's car and other property "outside the scope of the search warrants" and did not properly voucher items belonging to Plaintiff. Id. In addition, Plaintiff raised claims against then-Kings County Assistant District Attorney Avery Mehlman and Kings County District Attorney Charles Hynes. (Id.)

In the March 24, 2004 M&O, the court granted Plaintiff's request to proceed *in forma pauperis* and dismissed Plaintiff's non-property related claims and all claims as to Defendants Danchuk, Van-Casteren, Pepe, Mehlman and Hynes. Kneitel v. Danchuk, No. 04-CV-0971

(NGG), slip op. at 6 (E.D.N.Y. March 24, 2004). In that M&O, I found Plaintiff's claims for false arrest and malicious prosecution to be foreclosed by the Supreme Court's holding in Heck v. Humprey, 512 U.S. 477 (1994). (See March 24, 2004 M&O at 3-4.) I also held that Plaintiff's police interrogation claim could not be the basis of a § 1983 action, finding Miranda v. Arizona, 384 U.S. 436 (1966), to afford a procedural safeguard rather than a constitutional right. (March 24, 2004 M&O at 4.) I also dismissed Plaintiff's claims against defendant prosecutors due to their absolute immunity under § 1983 in suits seeking damages for acts carried out in their prosecutorial capacities. (Id. at 5-6.) However, I permitted Plaintiff to proceed solely with his illegal seizure claim against Defendants Lubrano, Orrico and Harrison, noting that the Second Circuit has held that an actionable illegal seizure claim exists when: (1) a plaintiff has not been given adequate notice of the proper procedures for reclaiming his property; or, (2) the procedures were not adequate to satisfy the requirements of due process. (Id. at 5 (citing Larkin v. Savage, 318 F.3d 138, 141 (2d Cir. 2003).)

With regard to Plaintiff's property-related claims, there are a number of undisputed facts, as follows:

After Defendants arrested Plaintiff, Defendants Lubrano and Orrico discovered Plaintiff's 1992 red Acura parked near a fire hydrant, brought it to the precinct, and conducted an inventory search. (Def. 56.1 ¶¶ 2-5.) All property in the car was vouchered, some as arrest evidence and some for safekeeping. (Id. ¶ 6.) The property included gunshells and pictures of Plaintiff dressed in a Nazi uniform. (Id. ¶ 8.) Plaintiff was not given a property voucher at the time of the inventory search of his car. (See Transcript of Proceeding before New York State Supreme Court Justice Edward Pincus at Declaration of Seth D. Eichenholtz ("Eichenholtz Decl.") Exhibit D (Docket Entry #29).)

Defendant Orrico is a sergeant with the New York City Police Department ("NYPD"). Orrico's involvement, according to Plaintiff, was that "[a]s a supervisor, it was his requirement to tell Officer Lubrano that [Plaintiff] should have been given the property vouchers" and that Orrico "was the one who actually seized the vehicle." (Id. ¶ 12 (citing Plaintiff's Deposition at Eichenholtz Decl. Exhibit E ("Pl. Dep.")).)

Defendant Lubrano is an NYPD officer. Lubrano's involvement, according to Plaintiff, was that, as the officer in charge of Plaintiff's vehicle, he "allowed the NYPD auction proceeds unit to sell" Plaintiff's automobile. (Id. ¶ 13 (citing Pl. Dep. at Eichenholtz Decl., Ex. E).)

Defendant Harrison is an NYPD detective. Harrison's involvement, according to Plaintiff, was limited to "conducting searches of [P]laintiff's home and storage facilities, seizing property from those places, and not providing [P]laintiff or his wife with copies of vouchers." (Id. ¶ 15 (citing Pl. Dep. at Eichenholtz Decl., Ex. E.) It is further not disputed that Harrison applied for and obtained search warrants for Plaintiff's apartment and then, along with other officers, executed the warrant. (Def. 56.1 ¶¶ 16, 17.) Among other things, while executing the warrant on Plaintiff's apartment, Harrison found and vouchered a Tech-9 automatic weapon. (Id. ¶ 19.) Furthermore, Harrison learned of two storage facilities in Brooklyn registered in Plaintiff's name. (Id. ¶ 20.) Harrison acquired warrants to search those facilities and searched one of those facilities. (Id. ¶ 21.)

Plaintiff attempted to recover his property on August 15, 2001 and was permitted to recover only property vouchered for safekeeping, not property the Kings County District Attorney's Office ("DA's Office") stated that it needed to hold as arrest evidence. (Id. ¶¶ 23, 24.) On May 21, 2001, Plaintiff wrote to Defendant Harrison and another NYPD official, Captain

4

Richard Capalongo, requesting that the NYPD inform Plaintiff of the whereabouts of his property and asking for copies of the property vouchers. (See R & R at 2-3 (citing Letters to Harrison and Capalongo, Exhibit U, attached to Plaintiff's Reply).) Capalongo responded on July 6, 2001 and told Plaintiff his property was being held and that Plaintiff could retrieve vouchers for his property at the precinct upon his release from custody, which happened in late July 2001. (Id.) After his release, Plaintiff claims he took numerous steps that are reviewed in Judge Bloom's R & R to locate his vehicle. (See R & R at 2-3.)

When Plaintiff "went to claim his vehicle it had already been inadvertently sold at auction by the New York Police Department." (Def. Motion at 3.) NYPD released Plaintiff's vehicle for sale at auction on July 25, 2001 and, at the point that Plaintiff learned that his vehicle was sold in late July 2001, he had not acquired a release for his vehicle from the DA's Office. (Def. 56.1 ¶¶ 26, 27.) None of the defendants issued Plaintiff a voucher for any of his seized property until about September or October 2001, when the DA's Office gave it to Plaintiff's criminal defense attorney. (R & R at 2 (citing Pl. Dep. at 60-66); Def 56.1 ¶ 27.)

Plaintiff brought this suit pursuant to 42 U.S.C. § 1983 alleging *inter alia* that Defendants unlawfully seized his automobile and unlawfully barred him access to his property in a storage unit registered in his name. After the March 24, 2004 M&O dismissing claims against Defendants Danchuk, Van-Casteren, Pepe, Mehlman, and Hynes, the remaining defendants, Orrico, Lubrano, and Harrison, moved for summary judgment on June 13, 2005, alleging that Plaintiff has not presented evidence of constitutional violations on the illegal seizure claims and that they are immune from liability. (See Defendant's Motion for Summary Judgment dated June 13, 2005 ("Def. Mot.")) (docket entry #29.) Plaintiff responded to Defendants' motion for summary judgment but did not include a separate Rule 56.1 statement. By Memorandum and Order dated October 31, 2005, taking into consideration Plaintiff's *pro se* status, I held

5

Defendant's motion in abeyance until November 30, 2005 for Plaintiff to resubmit papers that include a Rule 56.1 statement that corresponds to Defendants' Rule 56.1 statement. (See Memorandum and Order dated October 31, 2005 ("October 31, 2005 M&O") (docket entry #34). Plaintiff did submit additional opposition to the motion on June 13, 2005 (see docket entry #36) but did not respond to Defendants' 56.1 statement. I then referred Defendants' motion to Magistrate Judge Lois Bloom on April 7, 2006 for an R & R, which Magistrate Judge Bloom issued on January 24, 2007.

Having reviewed the R & R, I agreed with Judge Bloom's recommendation that Plaintiff failed to carry his burden with regard to the storage locker claims and found no error in her judgment. Furthermore, with regard to Plaintiff's automobile-seizure claim, I granted summary judgment in favor of Defendant Harrison and denied summary judgment for Defendants Lubrano and Orrico.

The court is now presented with Kneitel's motion for reconsideration, in which he contends that a number of previous findings by this court overlook relevant authority and misapprehend the factual record. (Plaintiff's Motion for Reconsideration ("Pl. Br.") (Docket Entry #58).) He first challenges the court's granting of summary judgment for Defendant Michael Danchuck ("Danchuk") under the Supreme Court's holding in Heck. Second, Plaintiff challenges the court's granting of summary judgment for Harrison based on Harrison's involvement in the seizure of his automobile. Third, Plaintiff seems to challenge the court's granting of summary judgment for Defendants Lubrano and Pepe. Finally, Plaintiff moves for the court to reconsider his claim against Defendants Mehlman and Hynes, arguing ongoing Rosario violations.

## II. Motion to Reconsider

### A. Standard of Review and Analysis

Although Plaintiff does not cite any statutory authority for his motion to reconsider, the court deems his motion to be brought under Fed. R. Civ. P. 60(b)(1), allowing relief from a final judgment where the judgment was the result of "mistake, inadvertence, surprise or excusable neglect," and Rule 60(b)(6), which permits reconsideration for "any other reason justifying relief from the operation of the judgment." See Rule 60(b)(1), (6). A motion under Rule 60(b) "cannot serve as an attempt to relitigate the merits" of a prior decision. Fleming v. New York Univ., 865 F.2d 478, 484 (2d Cir. 1989). Motions for reconsideration of a final judgment are "generally not favored," and are "properly granted only upon a showing of exceptional circumstances." Pichardo v. Ashcroft, 374 F.3d 46, 55 (2d Cir. 2004) (quoting United States v. International Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001)). The burden of proof is on the party seeking relief from the judgment. Id.

Furthermore, under Local Civil Rule 6.3, a party may move for reconsideration of a motion by "setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." However, "[t]he standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "The applicable standard is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the court." Lykes Pasco v. Ahava Dairy Prods. Corp., No. 97-CV-0652 (ILG), 1998 WL 427570, at *3 (E.D.N.Y. Jan. 26, 1998) (internal quotations omitted).

i. **Timeliness**

Plaintiff's motion, given his pro se status, should be viewed in a light heavily favoring the Plaintiff, see, e.g., Batista v. Union of Needlworkers, Indus. and Textile, 97-CV-4247 (HB), 2001 WL 506192 (S.D.N.Y. May 11, 2001). That said, his motion for reconsideration is untimely under Local Rule 6.3, which provides that a notice of motion for reconsideration shall be served within ten days after a decision on the original motion. Plaintiff's motion to reconsider is dated October 5, 2007, approximately three months after the issuance of the July 6, 2007 M&O and more than two-and-a-half years after the issuance of the March 24, 2004 M&O with which he takes issue. Despite Plaintiff's violations of the Local Rule, the court will also address the merits of his claims for reconsideration.

ii. **Danchuk claims**

Plaintiff argues that the court was incorrect to dismiss his false arrest and malicious prosecution claims against Danchuk under the Supreme Court's ruling in Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the Supreme Court held that:

> [I]n order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486-87. The underlying basis for the holding in Heck is "that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." Id. at 486. The principle applies to § 1983 actions "that necessarily require the plaintiff to prove the

unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution." Id.

Plaintiff argues that since his conviction was supposedly based upon a gun found in his bedroom, rather than a gun that he was firing in a public park, that his claim for malicious prosecution against Danchuk, his arresting officer, should not be barred under Heck. He argues that "since the matter was submitted to the trier of fact and those charges independently invalidated, it follows that my claims for malicious prosecution which includes the presentation of perjured testimony and evidence tampering are not barred under Heck." (Pl. Br at 2.)

Plaintiff has failed to point out any controlling decisions or data that the court overlooked in its prior decisions. In the first place, Plaintiff has not presented anything to the court that would upset the previous holding of summary judgment with regard to Danchuk. Regarding the false arrest claim, he has failed to provide any information or caselaw tending to support the notion that his claim is not barred under the rule announced in Heck, as police are not subject to § 1983 liability for false arrest where the disputed arrest was supported by probable cause. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996); Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994). A prosecution and conviction, if not overturned, is conclusive evidence that an arrest was supported by the requisite probable cause. Weyant, 101 F.3d at 852; Cameron v. Fogarty, 806 F.2d 380, 387 (2d Cir. 1986) ("[T]he common-law rule, equally applicable to actions asserting false arrest, false imprisonment, or malicious prosecution, was and is that the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested.") In his motion for reconsideration, Plaintiff has failed to show that his conviction has been overturned. Thus, he has not given cause for the court to reconsider its earlier holding with regarding to this claim.

9

Furthermore, with regard to the malicious prosecution claim, Plaintiff has not presented the court with any new precedent or evidence that would support reconsideration, including any information that his conviction has been reversed or otherwise invalidated. See Channer v. Mitchell, 43 F.3d 786, 787 (2d Cir. 1994) (allegations that two police officers committed "numerous acts of perjury and coerced witnesses in state court proceedings were properly dismissed where plaintiff "offered no proof that his conviction had been independently invalidated"); Smith v. Fields, 95-CV-8374 (DAB), 1998 WL 709815, at *4 (S.D.N.Y. Oct. 9, 1998) (dismissing plaintiff's allegations of unlawful collection and presentation of evidence where conviction has not been invalidated).

Aside from Heck, other caselaw supports the granting of summary judgment for Danchuk. For example, in Devenpeck v. Alford, 543 U.S. 146, 153-56 (2004), the Supreme Court held that probable cause to arrest need not be based upon the offense invoked by the arresting officer. "In fact, under Devenpeck, the offense for which probable cause is established need not be even 'closely related' to the offense invoked by the arresting officer." Davenport v. County of Suffolk, 99-CV-3088 (JFB), 2007 WL 608125, at *5 (E.D.N.Y. Feb. 23, 2007) (citing Devenpeck, 543 U.S. at 153-56). Under Devenpeck, a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and –

> [I]t is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest. Stated differently, when faced with a claim for false arrest, we focus on the validity of the arrest, and not on the validity of each charge.

Davenport, 2007 WL 608125, at *5. Similarly, I am constrained by the holding in Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006), in which the Second Circuit held that "a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not

relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest."

In the end, Plaintiff has not presented the court with any evidence, legal precedent, or data that supports his motion for reconsideration with regard to his claims against Defendant Danchuk. Accordingly, with regard to his claims against Danchuk, his motion to reconsider is denied.

### iii. Harrison claims

Plaintiff further asks the court to reconsider its ruling in the July 6, 2006 M&O granting summary judgment in favor of Harrison in connection with the seizure of his automobile. Specifically, the court \concluded that Plaintiff failed to raise an issue of material fact regarding Harrison's personal involvement in allegedly depriving Plaintiff of his automobile. As the court wrote:

> Both parties agree that Harrison's role in Plaintiff's case came after the seizure of the automobile and was limited to obtaining and executing the search warrants of Plaintiff's home and storage facilities. (Def. 56.1 ¶ 15; Pl. Dep. at Eichenholtz Decl., Ex. E.) . . . Furthermore, given Harrison's lack of involvement in the search, seizure or vouchering of Plaintiff's vehicle, I decline to adopt Judge Bloom's recommendation against summary judgment in favor of Defendant Harrison. I find that it is not a disputed fact that Harrison's personal involvement was limited to the claims Judge Bloom recommended dismissing, a determination with which I agree. Accordingly, summary judgment is granted as to defendant Harrison on the automobile-related claim.

July 6 M&O at 18-19. Plaintiff, in his motion for reconsideration, argues that "Wayne Harrison's involvement in this case is far more reaching that the seizure and sale of my car," (Pl. Br. at 3), and contends that Harrison should "be reinstated as a defendant" for "property other than my automobile," (id.).

11

The only other property at the heart of Plaintiff's claims are his storage facilities. The court's M&O also addressed Harrison's involvement in that seizure and found that the R & R was correct that Plaintiff's claims regarding these properties were wholly conclusory. As the court wrote:

> Other than oblique reference to a conversation with a man named John at the private self-storage facility where Harrison and others swore out a search warrant, Plaintiff puts forth no evidence of a hold on his property or of any other constitutional violation. In his objection to the R & R, Plaintiff further puts forth conclusory allegations that '[k]nowingly false and misleading information was used in order to obtain four search warrants.' (Pl. Reply at 4.) . . . I find[] that there is no evidence to support the claims for this property and that no reasonable jury could find for Plaintiff.

July 6, 2007 M&O at 18 (citations omitted). In his motion for reconsideration, Plaintiff does not add any new evidence, data or legal precedent that the court overlooked in its earlier decisions. Plaintiff continues to repeat unsupported allegations that Harrison "deliberately and with malice provided false information in his application for the search warrants," (Pl. Br. at 3), which is simply insufficient to support a motion for reconsideration. Accordingly, Plaintiff's motion for reconsideration of its earlier decision to grant summary judgment in favor of Harrison is denied.

### iv. Lubrano and Pepe claims

Plaintiff appears to challenge some ruling of the court with regard to Defendants Pepe and Lubrano, although it is unclear what relief Plaintiff is seeking. He writes, *inter alia*, that "we must ask what prompted Luis Pepe to visit an empty car on March 1, 2001? And, how does Cosmo Lubrano miss these blueprints? The answer is obvious; these blueprints were planted by Luis Pepe." (Pl. Br. at 4-5.) Plaintiff further writes that "these blueprints are used to create a scenario attempting to establish me as a terrorist attempting to assassinate Ex-President William Jefferson Clinton." (Id.) To the extent Plaintiff is seeking any relief from the court with regard

12

to these claims, it is denied because Plaintiff has failed to present the court with any controlling precedent or data that the court has overlooked in arriving at its earlier decision. See Fleming v. New York Univ., 865 F.2d 478, 484 (2d Cir. 1989). Thus, Plaintiff's motion, insofar as it requests relief with regard to his claims again Lubrano and Pepe, is denied.

v. **Mehlman and Hynes claims**

Plaintiff finally asks the court to reconsider its earlier dismissal of claims against Defendants Mehlman and Hynes. By M&O dated March 24, 2004, the court held that Plaintiff's claims against these two prosecutors are dismissed, since Mehlman and Hynes are immune from suit pursuant to 28 U.S.C. § 1915(A)(b)(2). As the court wrote: "Prosecutors enjoy absolute immunity from liability under § 1983 in suits seeking damages for acts carried out in their prosecutorial capacities." (March 24, 2004 M&O at 4 (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)).) Plaintiff now states that "[m]y claim does not arise from the prosecution but from prosecutorial misconduct . . . which truly denied my rights to due process and equal protection under the laws." (Pl. Br. at 5.) Plaintiff alleges violations of People v. Rosario, 9 N.Y.2d 286 (N.Y. 1961), contending that these prosecutors refused to turn over property vouchers to him. Plaintiff has not presented any new evidence or precedent, nor is the court of aware of any, that would support any other conclusion but that these two defendants enjoy absolute immunity from this suit. Accordingly, Plaintiff's motion for the court to reconsider the dismissal of charges against Mehlman and Hynes is denied.

**III.    Motion to Amend Complaint**

By affirmation dated October 8, 2007, Plaintiff has also moved to amend his Complaint but has failed to attach a proposed Amended Complaint. (Docket Entry #60.) The court will not grant Plaintiff permission to file an Amended Complaint without one. Thus, Plaintiff's motion to

13

amend the Complaint is denied without prejudice. "In order to satisfy the prerequisite of particularity in a motion to amend, a complete copy of the proposed amended complaint must accompany the motion so that both the Court and opposing parties can understand the exact changes sought." See Alston v. New York City Transit Authority, 97-CV-1080 (RWS), 1998 WL 437154, at *2 (S.D.N.Y. Aug. 3, 1998) (citing Smith v. Planas, 151 F.R.D. 547, 550 (S.D.N.Y. 1993) (holding that "[w]here the proposed amended complaint does not accompany the motion to amend, the Court may hold the motion in abeyance pending the filing of that proposed complaint, or the Court may deny the motion without prejudice.").

### IV. Conclusion

For the reasons stated above, Plaintiff's motions to reconsider and to amend the Complaint are denied.

SO ORDERED.

Dated: Brooklyn, New York
      December 17, 2007

                                              /s Nicholas G. Garaufis
                                          NICHOLAS G. GARAUFIS
                                          United States District Judge